

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

<u>**LETTER OPINION**</u>

August 23, 2011

Ty Hyderally, Esq.
Hyderally & Associates, PC
33 Plymouth Street, Suite 202
Montclair, NJ 07042
    (*Attorney for Plaintiff*)

Thomas A. Linthorst, Esq.
August W. Heckman, Esq.
Terry Davon Johnson, Esq.
Morgan, Lewis & Bockius LLP
520 Carnegie Center
Princeton, NJ 08540
    (*Attorneys for Defendant*s)

    **RE:   DePasquale v. Morgan Stanley Smith Barney LLC, et al.**
          <u>**Civ. No. 10-6828 (WJM-MF)**</u>

Dear Counsel:

    This matter comes before the Court on Defendants' motion to dismiss. There was no oral argument. Fed. R. Civ. P. 78. For the reasons that follow, Defendants' motion is **GRANTED.**

    **I.   BACKGROUND**

    From November 2004 until May 2010, Plaintiff Marisa DePasquale worked for Defendants Morgan Stanley Smith Barney LLC and Morgan Stanley & Co., Inc. (collectively, "Morgan Stanley") as a Service Associate. (Am. Compl. ¶¶ 11, 72.) Plaintiff

alleges that from March 2006 until her termination on May 20, 2010, she was routinely not paid overtime for her fourteen-hour workdays, and that her supervisor told her that attendance sheets had to reflect only 40-hour workweeks. (Am. Compl. ¶¶ 63, 79-81.) Plaintiff additionally claims that when she became more forceful in asking for overtime pay, her supervisor fired her in retaliation. (*Id.*)

On or about November 16, 2007, while she was still employed at Morgan Stanley, Plaintiff filed a Voluntary Petition of bankruptcy in the Southern District of New York, under Chapter 13 of the U.S. Bankruptcy Code. (See Am. Compl., Ex. A.) Plaintiff did not disclose the existence of this current claim against Defendants in her Verified Petition. Plaintiff's Chapter 13 bankruptcy plan was confirmed on September 11, 2008. On February 8, 2010, Plaintiff converted her Chapter 13 bankruptcy filing to a Chapter 7 filing. Plaintiff did not update her bankruptcy petition and schedules at the time of the conversion to a Chapter 7 filing. (Am. Compl., Ex. A.) On December 30, 2010, the Chapter 7 trustee filed a Report of No Distribution, finding that Plaintiff did not have sufficient assets available to satisfy her creditors. (*Id.* at 3.) The Report concluded that Plaintiff's $117,786 in debts should be scheduled for discharge. (Defs.' Moving Br., Ex. E.)

Meanwhile, as noted, on May 20, 2010, Morgan Stanley terminated Plaintiff's employment. On October 12, 2010, Plaintiff filed a complaint in state court, and on December 30, 2010, Defendants removed the case to this Court. On January 3, 2011, Plaintiff filed the instant Amended Complaint. Defendants then filed the instant motion to dismiss on January 27, 2011. On February 18, 2011, presumably in response to Defendants' motion to dismiss, Plaintiff filed an Amended Bankruptcy Petition with the Bankruptcy Court, including an amended schedule reflecting disclosure of this current lawsuit against Defendants. (*See* Pl.'s Opp. Br., Ex. A.)

## II.   DISCUSSION

Plaintiff's amended complaint includes the following counts: (1) violation of the New Jersey Wage and Hour Law; (2) violation of the New Jersey Wage Payment Act, (3) violation of the Fair Labor Standards Act ("FLSA"); (4) *quantum meruit*, (5) unjust enrichment; (6) breach of express contract; (7) breach of the implied covenant of good faith and fair dealing; (8) breach of implied contract; (9) violation of New Jersey's Conscientious Employee Protection Act ("CEPA"); (10) violation of New York's unpaid wages law; and (11) violation of New York's unpaid overtime premium hourly wages law.

Defendants seek to dismiss all of Plaintiff's allegations, based on the doctrine of judicial estoppel, for failing to include these claims in her bankruptcy petition. Defendants argue that (1) Plaintiff's nondisclosure in her bankruptcy petition is irreconcilably inconsistent with this current claim, (2) Plaintiff intentionally withheld disclosure of this

current claim from her bankruptcy petition in bad faith, and (3) there are no lesser sanctions available to prevent the miscarriage of justice. In response, Plaintiff states that her failure to disclose this current claim in her bankruptcy petition was an unintentional mistake, which she remedied by amending her bankruptcy petition after Defendants filed their motion to dismiss, and that the issue should now be considered moot.

### A.     Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true,[1] the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). The factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see Twombly*, 550 U.S. at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). Furthermore, the Plaintiff must "provide the 'grounds' of his 'entitlement to relief,'" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility..." *Iqbal*, 129 S.Ct. at 1949 (2009).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

### B.     Duty to Disclose

---

[1] This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

3

The Bankruptcy Code places an affirmative duty on debtors to fully disclose all assets and liabilities. Under the Bankruptcy Code, a bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case." 11 U.S.C. §541(a)(1). The debtor's schedule of assets and liability must disclose "contingent and unliquidated claims of every nature" and provide an estimated value for each contingent claim. *See Ryan Operations G.P. v. Forrest Paint Co., Inc.*, 81 F.3d 355, 362 (3d Cir. 1996). The debtor's duty to disclose is an obligation that continues throughout the course of the bankruptcy proceedings. *Bosco v. C.F.G. Health Sys.*, 2007 U.S. Dist. LEXIS 44314, at *9 (D.N.J. June 19, 2007). If the debtor is unaware of contingent claims at the time when she discloses her assets, the debtor has an obligation to amend the bankruptcy schedule and disclose claims once aware of them. *See Donato v. Metro. Life Ins. Co.*, 230 B.R. 418, 421 (N.D. Cal. 1999).

It is a "long-standing tenet of bankruptcy law" that one seeking benefits under the terms of the Bankruptcy Code is required to schedule all interests and property rights. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 (3d Cir. 1988). This disclosure obligation is crucial to the effective functioning of the federal bankruptcy system, "[b]ecause creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan." *Ryan Operations G.P.*, 81 F.3d at 362. If a debtor has enough information prior to confirmation to suggest that a possible claim exists, then it is a "known" claim that must be disclosed in the bankruptcy petition. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 323 (3d Cir. 2003). In sum, Plaintiff here had a duty to disclose her claim against Morgan Stanley as soon as she became aware that a possible cause of action existed.

### C.     Judicial Estoppel

Judicial estoppel is a judge-made doctrine that aims to prevent a litigant from taking a position inconsistent with one the litigant has asserted in a prior proceeding. *See Ryan Operations G.P.*, 81 F.3d at 358. It is not intended to eliminate all inconsistencies, but rather it is designed to prevent litigants from playing "fast and loose with the courts." *Id.* (quoting *Scarano v. Central R.R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)). The core principle of the doctrine of judicial estoppel is that, absent a good explanation, "a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Id.* (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477, at 782). However, the application of judicial estoppel is an extraordinary remedy to be invoked only "when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *Id.* at 365 (quoting *Onieda*, 848 F.2d at 424 (Stapleton, J., dissenting)).

4

Therefore, it is not designed as a technical defense for litigants looking to derail potentially meritorious claims. *Id.*

Unlike equitable estoppel, judicial estoppel does not require that the party urging estoppel demonstrate detrimental reliance on Plaintiff's previous inconsistent position. *See Ryan Operations G.P.*, 81 F.3d at 360. Similarly, judicial estoppel does not require that the party resisting judicial estoppel derive any benefit from taking inconsistent positions. *Id.* at 361.[2] However, whether the party benefitted or intended to benefit from taking the prior position may contribute to determining whether the party took inconsistent positions in bad faith.

In order to invoke judicial estoppel, the Third Circuit requires the moving party to show three elements: (1) "the party to be estopped must have taken two positions that are irreconcilably inconsistent;" (2) the inconsistent positions must have been taken "'in bad faith—*i.e.*, with intent to play fast and loose with the court;'" and (3) application of the doctrine must be "'tailored to address the harm identified'" and there must be no lesser sanction which "would adequately remedy the damage done by the litigant's misconduct." *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 778 (3d Cir. 2001) (quoting *Ryan Operations G.P.*, 81 F.3d at 361, and *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 108 (3d Cir. 1999)). The Court will address each element in turn.

1. <u>Irreconcilably Inconsistent Positions</u>

When a party takes an inconsistent position to try to gain some sort of advantage in bankruptcy proceedings, such as affecting creditors' willingness to negotiate their claims or enhancing the debtor's bargaining position, courts have found judicial estoppel to be an appropriate remedy. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 325 (3d Cir. 2003) ("Such nondisclosures affect creditors' willingness to negotiate their claims and enhance the debtor's bargaining position by making the pot that creditors look to for recovery appear smaller than it really is."). Defendants argue that Plaintiff's present claim is irreconcilably inconsistent with her failure to disclose it as an asset in her Chapter 7 bankruptcy proceeding.

The Third Circuit has expressly left open the question of "whether such nondisclosure [in bankruptcy schedules], standing alone, can support a finding that a

---

[2] It should be noted that other circuits, most notably the Sixth and Seventh Circuits, have reached the opposite conclusion. *See Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982); *see also Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1548 (7th Cir. 1990).

plaintiff has asserted inconsistent positions within the meaning of the judicial-estoppel doctrine." *Ryan Operations G.P.*, 81 F.3d at 362 (citing *Oneida*, 848 F.2d at 419). However, "the 'doctrine of judicial estoppel frequently arises in the context of a failure to list a claim as an asset in a bankruptcy, and the inconsistent pursuit of an undisclosed claim.'" *Clark v. Strober-Haddonfield Group, Inc.*, Civ. No. 07-910, 2008 WL 2945972, at *2 (D.N.J. Jul. 29, 2008) (quoting *Castillo v. Coca-Cola Bottling Co. of East. Great Lakes*, Civ. No. 06-183, 2006 WL 1410045, at *2 (E.D.Pa. May 22, 2006)). Additionally, the Third Circuit will consider nondisclosure in a prior bankruptcy schedule to be an inconsistent position where the nondisclosure is coupled with facts showing an inference of bad faith. *See Oneida*, 848 F.2d at 419.

It is undisputed that the Plaintiff here did not include this current claim against Defendants in her Chapter 7 bankruptcy petition. Defendants claim that the only reason Plaintiff finally amended her bankruptcy petition was to try to "cure" her deficiency only now that her omission has been exposed. (Defs.' Reply Br. at 2.) Defendants further argue that if the Court does not judicially estop Plaintiff's claim, then every debtor would take Plaintiff's "wait and see if I get caught" approach to their mandatory disclosure obligation during bankruptcy proceedings. (*Id.*) Plaintiff, however, asserts that because her actions were not done in an attempt to mislead the court, or her creditors, her mere nondisclosure of this instant claim in her original bankruptcy petition is not irreconcilably inconsistent. (Pl.'s Opp. Br. at 6.)

Although Plaintiff is correct that the failure to disclose outstanding claims in a bankruptcy proceeding is not automatically inconsistent with pursuing such claims, here, Plaintiff's continual failure to disclose this cause of action against Defendants in her bankruptcy petition rises to the level of inconsistent positions. As addressed above, a debtor's duty to disclose is a continuous obligation that exists throughout the entire bankruptcy proceedings. *Bosco v. C.F.G. Health Sys.*, 2007 U.S. Dist. LEXIS 44314, at *9 (D.N.J. June 19, 2007). Even if Plaintiff claims she did not have knowledge of her claim against Defendants at the time she filed for bankruptcy, at the very least she should have known that she had a duty to disclose it on October 12, 2010, the day that she filed her complaint in this Court. Instead, she waited until February 12, 2011 to disclose this cause of action in her bankruptcy petition, implying that Plaintiff only amended her bankruptcy petition because her omission was exposed to the courts when Defendants moved to dismiss. As such, the Court finds that Plaintiff's nondisclosure is inconsistent with her attempts to pursue these claims in this Court.

2. Bad Faith

Defendants further allege that Plaintiff acted in bad faith when she failed to disclose her claims in the bankruptcy proceeding. Defendants need not show direct evidence of bad

6

faith or intentional wrongdoing. Instead, a rebuttable inference of bad faith arises when allegations in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim "in the face of an affirmative duty to disclose." *Ryan Operations G.P.*, 81 F.3d at 363. Additionally, "statements or conduct of the debtor evincing a reckless disregard for the truth satisfies the element of intent." *Okan's Foods v. Windsor Assocs. Ltd. P'ship.*, 217 B.R. 739, 755 (Bankr. E.D. Pa. 1998). Conversely, if "the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court," then the doctrine of judicial estoppel should not be applied. *Ryan Operations G.P.*, 81 F.3d at 362.

Here, Defendants argue that Plaintiff had knowledge of this claim for an extended period of time before finally amending her bankruptcy petition, only disclosing it three weeks after Defendants moved to dismiss. Disclosure of Plaintiff's rather significant claim would have benefitted Plaintiff's creditors by enlarging the bankruptcy estate. Defendants argue, therefore, that the only reasonable conclusion to be drawn from Plaintiff's actions is that she sought to use her potential recovery for her own use, to the exclusion of her creditors. *Okan's Foods*, 217 B.R. at 756. Plaintiff, however, argues that since she did not know of the claim when she originally filed for bankruptcy and had no motive to conceal this claim from her creditors, her actions were not in bad faith. Plaintiff further explains that she had to prepare her bankruptcy petition in a hurried fashion under the threat of foreclosure of her home, and thus did not spend a "great deal of time" reviewing her bankruptcy petition. (Pl.'s Opp. Br. at 9.)

Though Plaintiff's arguments do explain why she did not initially disclose her claim, they are not sufficient to explain why she did not amend her bankruptcy petition at or around the time that she filed this instant claim against Defendants. First, insufficient legal advice is not an adequate excuse for failing to disclose this case in her bankruptcy petition, as "bad legal advice does not relieve the client of the consequences of her own acts." *Cannon-Stokes v. Potter*, 453 F.3d 446, 449 (7th Cir. 2006). In fact, this Court recently expressly rejected a party's reliance on counsel as an excuse for failing to disclose his potential tort action in prior bankruptcy proceedings. *See Meisinger v. Prudential Ins. Co.*, Civ. No. 10-5885 (WJM), 2011 WL 2036508, at *3 (D.N.J. May 23, 2011). Furthermore, Plaintiff cannot explain why it took her until three weeks after Defendants brought the error to her attention to actually amend her bankruptcy petition. In *Krystal Cadillac*, a case presenting a similar set of facts, the Third Circuit noted that neither the Bankruptcy Court nor the Third Circuit was "impressed by [Plaintiff's] eleventh hour candor." *Krystal Cadillac*, 337 F.3d at 321 (rejecting the plaintiff's argument that it could easily cure any inadequacy by amending its disclosure statement, since the bankruptcy case was still open). Here, Plaintiff is similarly attempting to cure inadequacies in her bankruptcy petition at the "eleventh hour." As the Third Circuit makes clear in *Krystal Cadillac*, "[t]he bankruptcy rules were clearly not intended to encourage this kind of

7

inadequate and misleading disclosure by creating an escape hatch debtors can duck into to avoid sanctions for omitting claims once their lack of candor is discovered." 337 F.3d at 321 (quoting *Burns v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)).  It is up to courts to maintain the necessary incentives for debtors to provide the Bankruptcy Court with a truthful disclosure of their assets.  *Id.*  In short, Plaintiff's failure to amend her bankruptcy filings by October 2010 at the latest, despite an affirmative obligation to do so, amounts to an inference of bad faith.

Finally, Plaintiff's argument that she had no motive to conceal this claim from her creditors is futile.  She "overlooks the fact that as a person seeking to discharge [her] debts in bankruptcy, [she] had a motive to conceal potential assets to prevent them from being available for distribution to creditors." *See Clark v. Strober-Haddonfield Group, Inc.*, Civ. No. 07-910, 2008 U.S. Dist. LEXIS 58865, at *7 (D.N.J. July 29, 2008).  The impending discharge of almost $118,000 in debt certainly provided a motive for Plaintiff to conceal this claim from her creditors in order to retain it for herself.  Thus, because Plaintiff concealed this claim and had motive to do so, bad faith may be inferred here.

### 3. Availability of Lesser Sanctions

The final element of judicial estoppel requires the Court to determine whether a lesser sanction would still be an adequate remedy.  Plaintiff claims that the better remedy here is to let her pursue this claim and potentially enlarge the estate available to fund the bankruptcy plan.  (Pl.'s Opp. Br. at 10.)  However, though some of Plaintiff's creditors may benefit from this "remedy," it essentially amounts to no sanctions whatsoever.  Applying such a lesser sanction here would only serve to reward Plaintiff for misleading the Bankruptcy Court, and would allow future debtors to take a "wait and see" approach to their disclosure obligations.  Additionally, Plaintiff would still reap the benefit of any recovery beyond the amount paid to creditors for outstanding debts.  *See Krystal Cadillac*, 337 F.3d at 325.  *See also Meisinger*, 2011 WL 2036508, at *3 (determining that judicial estoppel is not unduly harsh in such situations, and any lesser sanctions will not prevent the miscarriage of justice).  As such, the Court finds that judicial estoppel is an appropriate remedy here.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**, and Plaintiff's Complaint is **DISMISSED**.  An order accompanies this Letter Opinion.

                                                    s/ William J. Martini
                                                    **WILLIAM J. MARTINI, U.S.D.J.**